In Re: Auditors of Cumru Township.

Argued November 14, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*John J. McDevitt, Jr.,* and with him *Charles H. Werner,* for appellants.

*Geo. B. Balmer,* for appellee.

*Harvey W. Mohn,* for Cumru Township.

OPINION BY KELLER, J., April 16, 1934:

Cumru Township is a township of the second class in Berks County. The appellants constitute its Board of Auditors. The appellee is Harvey W. Mohn, its treasurer. This appeal is from the judgment of the court of common pleas of Berks County, which sustained the treasurer's appeal from the auditors' report surcharging him with $1,375, and directed the auditors to allow that amount as a credit in his treasurer's account. The facts as they appear of record are as follows: On January 14, 1928, pursuant to a petition of the owners of a majority of the lineal foot frontage along certain highways in several villages of Cumru Township (see Township Code of July 14, 1917, P. L. 840, Chapter VII, Art. II, sec. 386, as amended by Acts of March 27, 1923, P. L. 33 and April 27, 1927, P. L. 464), the supervisors contracted with the Metropolitan Edison Company for the lighting by electricity of the highways named in said petition; and pursuant to a like petition the supervisors on October 6, 1928, entered into a similar contract with the Metropolitan Edison Company, which superseded the contract of January 14, 1928, and provided for the fur-

nishing along said highways of 48 electric lamps of 250 candlepower each, at a charge of $188.52 per month, for the term of five years from February 15, 1929 to February 15, 1934. At the making of said contracts the said Harvey W. Mohn was neither treasurer nor a supervisor.

The supervisors levied and assessed against the property abutting on said highways in the district benefited by said lighting an annual tax for the years 1928, 1929 and 1930 sufficient to pay for said lighting bills; but failed to collect from said tax enough money to pay said lighting bills due Metropolitan Edison Company. In August, 1930, when $1,308.11 was owing the company for said lighting bills, and more than that amount was outstanding in the lighting taxes levied to pay them, the Metropolitan Edison Company discontinued furnishing the electric lights because of such non-payment. Thereafter on February 24, 1932, pursuant to a resolution of the board of supervisors, of which he was then a member, duly adopted, the treasurer transferred $1,375 from the general or road fund of the township to the special light fund, and from this fund, on order of the supervisors, paid the bill due the Metropolitan Edison Company. For doing so he was surcharged $1,375 by the auditors.

Assuming, for the moment, that the lighting contract was legal and valid, we have, then, a debt due by the township to the Metropolitan Edison Company in 1930 of $1,308, which was a binding obligation of the township. The appellants contend that, even in these circumstances, the supervisors had no power or authority to direct the treasurer to transfer $1,375 from the road fund to the special lighting fund in order to pay it, and that the treasurer became personally responsible for making the transfer and payment pursuant to the resolution and order of the board of supervisors. We cannot assent to this position.

By section 420 of the Township Code it is provided that the estimates for the road tax shall include: "(a) The amount of money necessary for the maintenance, repair, and improvement of highways, including sluices. (b) The amount of money necessary for the repair and construction of culverts and bridges. (c) The amount of money necessary for the purchase, hire, repair, and custody of tools, implements, and machinery. (d) The amount of money necessary for the payment of debts, or other miscellaneous purpose." It is clear, therefore, that the proceeds of the road tax, called the road fund, is a general fund intended to cover the amount of money necessary for the payment of debts or other miscellaneous purpose. It is the only fund provided by law for the payment of the usual and ordinary expenses and valid debts and obligations of the township.

Section 260 of the Township Code provides that: "Whenever any moneys are collected in any township of the first or second class, for any special purpose, and are paid into the hands of the treasurer of such township, it shall be unlawful for such treasurer to apply such moneys, or any part thereof, to any purpose other than that for which such moneys were collected. Every such misapplication shall be a misdemeanor." It will be noted that this applies only to moneys collected for any *special* purpose. It would, except in unusual circumstances, prevent any moneys levied for a special purpose, such as a special lighting or fire hydrant tax, from being used for the repair of roads and bridges, or the general expenses of the township; but it does not operate conversely to prevent the road or general fund from being applied, on orders of the supervisors, (See section 287) to pay a debt existing because of a deficit in, or as an advancement to, a special fund. In this particular case the transfer from the road fund to the special light-

ing fund is only an advancement to be repaid when the taxes levied for the benefit of the special lighting fund are collected. There were ample moneys in the road fund to permit the transfer without affecting the necessary maintenance, repair and improvement of highways and bridges.

Nor does the provision in Section 386, clause II, that the special lighting tax shall not be levied against any farm land, prevent such a transfer. This clause prohibits the levy of a special lighting tax against farm land. It does not forbid the use of money in the road fund, obtained by general taxation, from being used to pay the just obligations of the township or from being advanced temporarily for the benefit of the special lighting fund.

It must not be overlooked that under clause I of section 386 of the Township Code the supervisors had the authority to contract for the lighting of the highways without any petition of the property owners, and defray the cost of the same out of the general, or road, fund available. This larger authority, although not exercised, would seem to justify the following statement in the opinion of the lower court: "They [the supervisors] therefore have the authority, even after they have levied such [special] tax, to pay such light bill owed to the light company out of the general fund, provided that they reimburse the road fund from the special taxes when and as collected. Having levied such special taxes, it is their duty to collect them and to apply them for the purpose for which they were levied. The special light taxes levied for a given year are levied for the purpose of paying the light bill for that district primarily for that year. The road fund clearly must be reimbursed from such taxes when and as collected; otherwise there would be no legal purpose to which such special light taxes, when and as collected, could be applied."

The appellants further contend that the contract between the township supervisors and the Metropolitan Edison Company was invalid because it had not been approved by the Public Service Commission in accordance with section 11 of Article III of the Public Service Company Law (Act of 1913, P. L. 1374). The contract is not set forth in the answer of the appellants or in the record. Without it we cannot determine whether it is such a contract or agreement as is contemplated by the above section of the Public Service Company Law. If it is only a contract or agreement to pay the scheduled effective rates of the Metropolitan Edison Company, no such approval would be required, under the decision of the Supreme Court in Suburban Water Co. v. Oakmont Borough, 268 Pa. 243, 250, 251, 110 A. 778. There is no rule of public policy which prevents a municipality dealing honestly with its creditors, and, where a tax has been levied, and is outstanding, against property holders sufficient to pay for the electricity furnished by a public service company, it would require more than appears in the present record to have us hold that the township authorities may not recognize the debt as a valid and legal claim against the township, and authorize its payment. In any event there was nothing to put the township treasurer on notice of any alleged illegality. The transfer of the road fund to the special lighting fund was made pursuant to resolution of the board of supervisors and the money was paid on the order of the supervisors as directed by law. There is no suggestion of fraud, unfair dealing, or of failure to supply the lights. To hold the township treasurer personally liable, as for a mispayment, under such circumstances, would be going beyond any of the decisions that have been called to our attention, and would unreasonably penalize him.

The judgment of the court below is affirmed at the cost of the appellants.